Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 95 C 3316 | **DATE** | 5/23/2002 |
| **CASE TITLE** | BARNER, et al vs. CITY OF HARVEY, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: plaintiffs have failed to establish a disparate impact and the defendants have established a legitimate nondiscriminatory reason for their action. Judgment is entered for the defendants as to plaintiffs' disparate impact claim.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 24 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 344 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Ezella Barner, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 95 C 3316 |
| v. ) | Judge Ronald A. Guzman |
| ) | |
| City of Harvey, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

## INTRODUCTION

In Count VIII of Plaintiffs' Fifth Amended Complaint Plaintiffs Allege Racial Discrimination against the City of Harvey in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e, et seq. In the pretrial proceedings this court held the plaintiffs' class wide allegations of a pattern or practice of discrimination would be tried to the jury, while plaintiffs' class disparate impact claim would be tried to the bench. After approximately four weeks of testimony the jury returned a verdict in favor of defendants finding that no defendant engaged in a pattern or practice of intentional race discrimination. Plaintiffs now move for findings and judgment in their favor as to their class disparate impact claim. Defendant's object claiming that plaintiffs did not plead a disparate impact claim, that they were denied the right to a jury trial on the alleged disparate impact claim, that the claim is barred by res judicata and/or collateral estoppel

and that the evidence fails to prove the disparate impact claim. We find that the evidence fails to establish this.

## DISCUSSION

To establish a prima facie case of disparate impact discrimination a plaintiff must first isolate and identify the specific employment practice that causes the discriminatory effect, and then demonstrate, by offering statistical evidence of a sufficient kind and degree, that the practice in question causes the disparate impact.

Plaintiffs claim that the city's stated policy and practice of selecting employees to receive termination letters based on Graves' and Nicolas Forte's subjective assessments of whether the employees' positions were "essential", looking merely at the titles of the positions and not at the qualifications and attributes of the employees in the positions constitutes an employment practice which has had a disparate impact on African Americans. Defendants deny any disparate impact and assert a nondiscriminatory reason for the alleged practice. First, the decision to terminate employees from administrative positions in order to be able to hire more police officers is more of a policy determination regarding the allocation of public resources than a hiring practice. It involves political considerations regarding the needs of the City. Indeed, it is for the very purpose of making such political/policy determinations that Mayor Graves was elected by the citizens of the City of Harvey who are overwhelmingly African-American. A determination of what is the best policy for an elected public official to follow in allocating scarce public resources cannot be analyzed in the same way that we would scrutinize pure "business necessity" as it exists in the commercial world. Whether or not

-2-

it was necessary for the City of Harvey to shift manpower from administrative positions to law enforcement positions is largely a political question as it depends upon what kind of a community one believes the City of Harvey should be. It is to answer such questions that we hold elections and choose between the competing visions of the various candidates. There was much testimony that Mayor Graves believed that the City of Harvey's police department was under-staffed, crime was out of control, and that the City was experiencing severe financial difficulties. He testified that it was his intent to remedy this situation by reducing the number of non- essential administrative employees and increasing the number of law enforcement officers, thus redirecting scarce resources from administration to law enforcement. He began acting on this intent within days of being elected. Mayor Graves was a lifetime resident of the City of Harvey as well as a longtime member and prior chief of its police department and also a previous treasurer of the City. Indeed, the determination to place a greater emphasis on law enforcement and to straighten out the city's financial position was part of his mayoral campaign. To the extent that his election reflects the will of the majority of the citizens of the City of Harvey, it is not for us to override that determination by declaring that it fails the "business necessity" test. The evidence gives us no reason to believe that this determination was purely a sham, an excuse to practice discrimination.

Plaintiffs also argue that defendants failed to consider the qualifications and attributes of the employees in the positions eliminated thereby executing an employment practice which adversely impacted African Americans. They give various examples of seemingly well qualified African American employees who were terminated as a result of

this practice of looking solely at the position rather than the qualifications of the person. However, the evidence does not support the conclusion that this practice resulted in a disparate impact on African-American employees. We do not have sufficient evidence to conclude that taking into account each particular employee's qualifications and abilities would have resulted in fewer African-Americans being terminated in a work force that was over 70 percent African American to begin with. Even if we agree that a number of highly qualified African-Americans were terminated while less qualified employees were retained because of the alleged failure to consider individual qualifications, we cannot merely assume that the employees who would have been terminated had qualifications been taken into account, would not also have been African-American. In order to establish a disparate impact plaintiffs would have to establish that taking into account individual qualifications would have resulted in a statistically significant lesser number of African-American terminations. In other words that the hierarchy established by rating employees according to qualifications within the targeted departments would have resulted in non-African Americans being terminated, rather than merely different African American employees being terminated. The evidence adduced is not sufficient in this regard. Further, there was evidence that by discharging the more highly qualified individuals, generally those holding supervisory positions, more money was being saved and therefore available for reallocation. This would constitute a legitimate basis for discharging the more highly qualified employees.

Defendants presented testimony regarding specific reasons for targeting certain of these highly qualified individuals for termination. For example, plaintiffs cite the

termination of Rufus Fisher as an example of an African American employee who was terminated because of the failure to consider the qualifications and attributes of employees by the defendants. Yet, the testimony by Mr. Piekarsky was that Rufus Fisher as the superintendent of water was in charge of collections and that under his supervision the City was experiencing many problems with the collection of water bills which was depriving the it of a substantial amount of revenue are. There was also testimony that Mr. Rufus' position was never filled after his termination. Instead, two subordinate employees of the water department assumed his functions. Terminating a higher paid superintendent who was performing poorly and assigning his duties to two lower paid subordinates would be in keeping with both the goal of saving money and of reallocating funds from administrative to law enforcement sectors.

Plaintiffs also cite the example of Mr. Henry Jefferson, a meter reader and repairman in the water department. But there was also testimony to satisfy a legitimate reason for discharging Mr. Jefferson. It appears that Mr. Jefferson received a $5000 raise shortly before the election of Mayor Graves and that after his termination, his position was left vacant and his duties were assumed by an existing employee thereby saving substantial amounts of money.

Also testifying was Barbara Chalmers, a secretary, who was hired in 1992 and received a budget cut letter in April of 1995. She was proficient with computers, processed strong typing skills and held secretarial positions since 1974. At the time of the election she was the personal and confidential secretary to Mayor Graves' opponent, Mayor Johnson. Less than a year before her termination she received a $3000 raise. Ms.

Chalmers was replaced as personal secretary to the Mayor by Camille Krenczyk, who was already employed by the City of Harvey. Thus, there is nothing inconsistent with her termination and Mayor Graves' stated policy determination of saving money and reallocating resources.

Plaintiffs also identify James Dixon, African-American, as a foreman who supervised Michael Lopez, Hispanic, and Steve Josephson, Caucasian. Mr. Dixon was terminated by a budget cut letter while Mr. Lopez and Mr. Josephson, were not. Yet Mr. Dixon testified that to his knowledge no one was hired to replace him and Lopez and Josephson simply assumed his duties after he was terminated. If so, then again there is nothing inconsistent about Mr. Dixon's termination and Mayor Graves' stated policy determination of saving money and reallocating resources.

The evidence also fails to establish the statistical significance of the overall numbers plaintiff has presented. For example, the fact that only African-Americans were sent budget cut letters would be highly significant if only one percent of the employees in the targeted labor force were African-Americans. In most situations it would be insufficient to establish a disparate impact if 100 percent of the employees in the targeted labor force were African-Americans. In the case before us approximately 222 of a total of 313 workers for the City of Harvey were African-Americans when Graves took over as mayor. Plaintiffs argue that thirty-three African-Americans were terminated as part of Graves budget cuts and no Caucasians were dismissed. Is this a statistically significant result? It is tempting to say yes, but we do not know because no statistical analysis was ever presented. Plaintiffs chose not to present an expert witness in this case. Further, it is

not possible to compare the racial composition of the work force once Graves was done restructuring his administration to the racial composition of the qualified persons in the relevant labor market. Plaintiffs have failed to establish the geographic boundaries of the relevant labor market, or the number of qualified African Americans within the geographic boundaries for each of the various positions for which workers were hired.

## **CONCLUSION**

For the reasons given above we find that plaintiffs have failed to establish a disparate impact and that defendants have established a legitimate nondiscriminatory reason for their actions. Judgment is entered for the defendants as to plaintiffs' disparate impact claim.

SO ORDERED                                                ENTERED:  May 22, 2002

*[signature]*

HON. RONALD A. GUZMÁN
United States Judge